Our first case for argument today is 24-1721, Selva v. Amazon. Mr. Hadley, please proceed. May it please the Court. The Court's cases say that in considering Alice Step 1, the question focuses on what the patent asserts is the advancement over the prior article. That advancement in the SEIVA patents is an improved digital picture frame. It is not improved computer technology, and it can't be. In fact, Amazon admits that the improved picture frames that allows accessing and updating of photographs does so without a computer. But that is the invention. But then it argues that that invention is abstract because it does not improve computer technology. It makes no sense. If the invention operates without a computer, then how could it be that it is abstract because it doesn't improve computer technology? But the picture frame does have computer processors, correct? That is part of the invention, correct. It includes a computer processor that was never in a digital picture frame before. It includes an upgraded memory that can interact with a processor and a communications link that was never in a digital picture frame before. And it includes a communications link that was never in a digital picture frame before. And it includes programming. One of the keys to the invention is that this programming allows the digital picture frame to operate without any user input. In fact, the claims make clear that because it is not a computer, that there is no user interface like they would have in a computer that allows the digital picture frame to operate, that it requires a user to operate the digital picture frame. But don't the claims simply look like sending and receiving data using generic hardware and software? The hardware, the processor, and the memory were known. We don't contend otherwise. But the invention isn't generic hardware. The invention is the, the invention itself is the environment that consists of hardware that had never been before being used in a digital picture frame. Well, one doesn't claim an environment. You claim a system. And maybe in a different world we might say, well, the system is not abstract. But that's not the world we live in. And if one breaks down a system claim and finds that it's passing information back and forth with generic components, that's where we are. And how can we break past precedent? Well, the past precedent teaches that just because a device uses components that were already known doesn't mean that a device that uses those components is necessarily abstract. There are a number of inventions that this Court has held to be non-abstract that use quote, unquote, generic components. In other words, you don't have to invent a new type of computer or a new component to satisfy Section 101. In fact, the, this Court's recent decision in Contour versus GoPro is a very good illustration of that. That case involved a generic point of view camera, small camera, that already existed. It had all of the components that were already known in the art. And the invention was to take that camera and make it, and add to it the capability to generate multiple streams. The process of generating multiple streams of video was certainly well known at the time. It was done with computers and other types of existing equipment. But this Court found that that invention was not abstract because it was the first device that took those existing hardware components and put it in a point of view camera so that that camera could do something that the camera never did before, namely allow a user to have a high, high quality recording on the device itself and a low quality recording on something like a mobile phone. The Court. Counselor, what would you say is, is the, the specific improvement that this claim is directed to? The specific improvement. Especially pre-quarantine. The, the specific improvement that this claim is directed to is the use of, of hardware and software that had never before been put in a digital picture frame so that a person without any technical training whatsoever can take the device, plug it in, connect it to a phone line, and receive photographs from a remote site automatically and have those photographs updated periodically at a, at a preset time. And that involves the, the specific steps that are required in the claim involve making sure that the device itself is authenticated. You don't want to receive photos that are intended for another, a different device. You only want the photos that are intended for your device to contact the repository and to receive those photos so that you walk the, the, as explained. I'm surprised, I'm surprised that you have not mentioned as, as a specific improvement the, the claim limitations of physically separable. That is another one. That it is, that, that, and that is the back answer. I was describing the, what is novel about the computer, the, not the computer. As far as I understand, everything you've said up to this point is, well, a computer. And, and the point is that the picture frame itself is not a computer. In fact, the claims and, and the specification are clear that it's not a computer. For no other reason, the computer requires a user input. But on the back end, as you said, the other improvements on the back end includes that, that it is physically separable so that it can be remotely controlled by somebody who is computer savvy. And that allows for all sorts of other enhancements, namely in the security area. Again, so that the device doesn't receive photos that aren't intended for it. It can be updated and, and the user can, or a, a, on the remote side, the, the back end can communicate or somebody can communicate with the device itself to the extent that that needs to take place. That's all part of this invention. And that was all things that were never done with conventional picture frames. And as a matter of fact, as the patent explains, these were all things that were never even done with computers before. The patent talks about prior systems that could allow for the sharing at the time, and this goes back to 1999, when dial-up was the standard communications that computers could do to obtain photos. And it talks about email systems and the limitations with email systems and why those email systems didn't work. Why this was an improvement over the email systems. The email systems obviously worked, but it required special software, special programming, and a bulky computer. The patent also explains why prior art push systems didn't work. Systems that could automatically update a computer. And it explained why things like what's called a pull system, namely a web browser, was insufficient. And why those things cost thousands of dollars at the time and this device could be made, this invention could be made for a couple of hundred dollars and required no technical ability whatsoever. So is it your position that in Contours, our Contours case, helps you? Helps your position? Yes, I think Contours is directly on point because, for a couple of reasons. One is because Contours involved the use of existing hardware in a device where it had never been used before to allow the device to do something that it had never done before. And that is exactly like this invention. This invention took an existing digital picture frame, the one that existed at the time was the Sony CyberFrame, and it greatly improved it. It put in hardware that had never been put in a digital picture frame before and it allowed the digital picture frame to do things that a digital picture frame had never done before. Like, well, I'm trying to get you to a position to really address with a little bit more specificity, what is it that is eligible or is not abstract under Step 1 with this? The ability to obtain new photographs automatically without any user intervention. Without any user input whatsoever or any user operation whatsoever that others remotely, separate from the device itself, can put into a dedicated storage location and the device itself can access that through an authentication procedure. That is the improvement, or the main improvement, and to update those photos. That is what had never been done before and that is not an abstract idea. Just the device itself, I don't think, I'm aware of the cases talking about generic components, but when you put those generic components into a concrete device, an actual physical device that is described in the claims, it is hard to say that that device that is described in these claims is abstract. It is a real thing. It is a thing that you can read about and hold, and whether it has conventional components or not is really not the question of whether it is abstract. And a number of this Court's cases … But whether it is a real thing that you can hold has nothing to do with whether it is abstract. Yes, I agree with that. It is a real thing. It is a concrete … But it doesn't matter. Everything is a real thing. Like, people aren't filing patents on fake things. It is not just software. It is not an improved computing mechanism. It is an improved digital picture frame. And just like the point of view camera in Contour was an improved thing, and this Court's decision talked about that it was not abstract because it was in the context of an improved camera. Are all of the patents at issue expired? I believe there is still some time left on one of the patents, but I think the others have largely expired. Do you know which one is … there is still some time left on one of them. Which one? I am not sure, but I can … Maybe on rebuttal, could you … I am sorry? Maybe you will find that out for me on rebuttal. Yes, I will attempt to do that. Okay, great. And I think that on the flip side, the case that is different and can be easily distinguished is ChargePoint. In ChargePoint, this Court was very clear in explaining that the … that by adding a communications network to an EV charging station, the EV charging station still had all of the components that it previously had. That there were … Any time for rebuttal? Because this is your rebuttal time you are using now, so … The last point is that the EV charging station, if you wanted to compare it to the SEVA patent, would have simply communicated what the user was doing. So in SEVA, the invention is not communicating what photo somebody is looking at. I will save the rest of my time for rebuttal. Please, the Court. Dave Hadden for Amazon. The District Court correctly found that these patents claim ineligible subject matter. The patents claim the abstract idea of automatically accessing a data store for updated content without a computer and without other user interactions in the context of a digital picture frame. But the claims claim that idea using purely functional, result-oriented language. 573 patent claim 19 is illustrative. It claims a digital picture frame with software configured to operate according to preferences defined by a user. And a user interface configured to obtain image data and set preferences from said user. And a server system is configured to periodically relay said image data and set preferences to a set, at least one, digital picture frame. And finally, the picture frame is configured to obtain an update for said operating system software … I would distinguish this case from our decision in CONTOUR IP holding, which your opposing counsel brought up a couple of times, which by the way says a camera process configured to in the claim there. The word configured to is sprinkled throughout the claims in the CONTOUR case as well. So I don't think the fact that it just says configured to in the claims in your case necessarily mean it's not eligible, because that same language is sprinkled throughout the claims in CONTOUR and the Court concluded otherwise there. Well, in CONTOUR, Your Honor, the claims covered the specific improvement to the point-of-view camera. And in particular, the Court focused on the fact that it in parallel at the same time recorded two separate streams, a high-quality stream and a lower-quality stream, and streamed the lower-quality stream wirelessly to a device. That was a new specific functionality that was added in those claims to the device. But likewise, how is the new functionality in this claim exactly what Judge Raynor was referring to, which is the physical separability? Prior to this claim, you had to maybe, you know, take a little storage device to insert your pictures into the digital picture frame, making a physical connection, whereas here there's a separable wireless transfer permitted. So how does that not compare to the same kind of improved functionality that was at issue in CONTOUR? Yes, Your Honor. The difference is here the improvement is just accessing information over network. As Judge Lurie pointed out, this Court's precedent of very clear that that is an abstract idea. We go back to Finney Labs versus Amazon. The claim was to streaming content to a user's wireless device using a customized interface. And because the claims captured only that idea in result-oriented language, the Court found it abstract. And there's no difference here. The same is true in TLI, right? In TLI, the idea was sending an image from a phone to a server with classification information. And the Court found that was abstracted because it was claimed just at that high level. In this case, it's exactly kind of the reverse of TLI. Here we have a server sending a photo to a device for viewing, claimed at the same high functional level. The difference here, though, is that the person, the user, that's using the interface does not have to be physically close to the frame. In fact, you could have multiple users throughout the country that are sending pictures to the grandfather or to somebody, and those things are being automatically uploaded. But that is claimed, again, in just this functional language. The idea is you have a user interface, which they say is separate, could be a web page. In existing technology, especially with the cyber devices, you had to be at the device itself. So somebody had to go up and use a thumb drive or something to provide the photos for the digital frame. This invention seems to me, especially with the language in CLAIM 19, that a user interface is physically separable. That was not the cyber device, was it? In the Sony device, there was not a separable interface. So this is, from this point, this CLAIM language is something that was not practiced before. This is not part of a cyber device. It was not part of the Sony device. But the idea of being able to receive data through an interface that is remote from the device, that is no different than TLI or GoTV, all those situations, the user can do something and then receive information either from a server or to a server. So the fact that you can interact with the web page and separate data from the device, that can't be the invention. In fact, SEVA did not even claim that that is an inventive concept here. The inventive concept that they claim is nothing but the idea itself that is of an automatically updating picture frame. Again, there's no improvement to any underlying technology. And they acknowledge that. So I don't think that this case has any concrete implementation of any new technology, which is the test. It's step one. In contrast, we found improvement to a portable point-of-view digital video camera. Here, the descriptive language in the claim says a user interface that is physically separable. So that is descriptive language. Do you agree with me? I agree that the claim talks about having a separable user interface. So how is this different from contour? Well, because a separable user interface, as the patent explains, is just a web page. Web pages were known and conventional. The idea that you could, you can send someone an e-mail through a web page. You can provide information through a web page. The web was around 15 years before these patents. In contour... Is that true in the field of digital picture frames? Digital picture frame is just a consumer product that, as you want to point it out, has internal components, computer components, a processor, and a display. All of these things were standard. What you're talking about here with respect to the remote interface is just a web page that people can provide information to. That is distinct from whether it's going to a digital picture frame or a PC or a tablet computer. In fact, what they claim infringes these patents are tablet computers. So there's nothing specific about this being tied to a digital picture frame except for their product idea. That was their product. And it may have been a good product idea, but it's still just an abstract idea the way it is claimed because they claim no specific improvement to any technology. All right. Patents expired. I'm not sure. There may be one that's still standing, but hopefully he can answer that question for you, sir. So I don't think that this claim can be distinguished from GoTV, TRI, Affinity Labs, or several other cases in this court recently that have found that this type of functional language is not sufficient either as step one to claim a specific improvement to computer network technology or to step two because, again, as this court held in GoTV, it just doesn't pass muster as far as identifying a concrete technical implementation improvement that is required as step two. How do you define what our court did in Contour IP? I mean, certainly there's so many data points out there, and you're pointing to the ones that help you, but the hardest one for you, it seems to me, is Contour IP. So can you really do the best job possible of explaining to me how this case is different from that? Yeah, I think the best is that the claims and the device that was claimed there did this dual recording in parallel, as the court relied on. So it's recording two streams at the same time of different quality and is streaming one of them to this remote device. So that is a concrete technical change. They're now recording two streams simultaneously. Okay, but here in this case, I'm just going to draw some analogies for you, is in this case, it's never been the case that these digital picture frames before sent and received information in a manner that did not require the person to physically be present or had these authentication functions as a component of their process. So those are highlighted as technical improvements to the digital picture frame technology. I would think that kind of parallels in my mind to multiple video streams in the Contour IP case. Well, I think receiving information remotely is not the concrete improvement that we see in Contour where you are recording two streams. Oh, I agree completely. In fact, in Contour, the court said, here claim 11 describes more than wireless data transfer within a particular technological environment. Instead, it enables a camera to operate differently than it could otherwise by both recording multiple video streams in parallel and wirelessly transferring only one of them to a remote device. So it has a kernel of something different in the way it operated to effectuate the data transfer. Here, is there something like that in the claims at issue vis-a-vis the authentication function or the remote triggering or something like that? I don't think there is, Your Honor. The authentication, as this Court held in my mail and other cases, is something that is abstract of itself. And there is nothing concrete about what is claimed in the authentication step here. Beyond that, then we're left just with receiving information. And the Court has, again, repeatedly said that that is abstract. So we are, I think, far from Contour as far as how concrete this patent claim a technical improvement. Contour, we had something concrete. We had these two streams being recorded, different quality simultaneously. Here we're talking about authentication and receiving and sending information. Concepts that this Court has repeatedly held are abstract. And there's nothing in the claim that describes any new or improved way to achieve either the authentication or the sending or receiving of the image information. All of the claims just talk about configuring to do what the user wants. So, assuming the claims are abstract, do they reside in the vending function? No, they don't, Your Honor. And SEVA never identified one. And what they identify in their brief, and this is on page 19 of the reply, is nothing but the abstract idea. They say at page 19 that the invented concept is the unconventional functionality of a digital picture frame that automatically configures itself upon power-up, automatically and periodically retrieves new photos for display, allows others to send photos for automatic retrieval and display, and allow users to remotely configure and control the frame. That's nothing but the abstract idea. And this Court's question is clear that at Step 2, the invented concept has to be some concrete implementation improvement to the technology. And they have not identified any, not as any element of the claim or specific combination of those elements. Finally, they haven't raised a fact dispute. Their only purported fact dispute is that there was praise for the commercial product. But the District Court correctly rejected that because it's irrelevant. The failure at Claim 2 is a matter of law because they did not identify anything except the abstract idea. And even if you look at what the praise is, as SEVA says itself in page 57 of its blue brief, the primary advantage that was repeatedly praised in the cited evidence was the ability for a non-tech-savvy user to plug in the device and have it automatically set itself up and start periodically downloading pictures. That is, again, nothing but the abstract idea. So that cannot create a fact dispute at Step 2. So you're saying that a physically separable user interface that's separate, away from the digital camera frame, that's not concrete? Well, it's not, because all they're talking about is a web page that someone could access. That's not concrete. That's not a new improvement. They're just saying that somehow you can configure this thing using something different than the device itself. In fact, in Affinity The background of this case suggests that in the field of digital frames, picture frames, that in the prior field, under the cyber devices, the user had to be close or on top, touch the device in order to upload pictures. Here, the steps taken through the sequence is where the user can be anywhere. It's physically separate. Why is that not concrete? Well, it's the same as in Affiliate Labs versus Amazon. There was this issue of a customer user interface that was separate from the device, essentially a web page that would be used to select the content that would be streamed. It's exactly the same thing here. There's nothing concrete about this separate user interface. There's just any mechanism other than pushing a device on the frame itself. And in the patent, it's described as a generic web page. That is not the idea of providing or sending information or even setting up a device using a web page is both abstract and nothing new. Okay. Thank you. Thank you. Mr. Hadley. Your Honor, in answer to your question about what the patents that aspired, unfortunately, I can only say that I'm not entirely sure. The 930 patent and the 656 patent were both extended by over a thousand days, but both subject to terminal disclaimers. And my understanding is that they have been expired, but I would need to check that with prosecution counsel because there's been some recent case law on how the extensions interplay with terminal disclaimers. Judge Arena, it is not correct that the physically separable user interface is just a web page. If it were, then when you came and turned on the device, you would get thousands and thousands of photographs that may not be intended for the device. It is much more than just a web page, and the patent explains the unique features and properties of that interface to make sure that the device itself receives only the photos that are authorized to be sent to it. Where do the claims do that? The claims do that in, it's actually the limitations that was mentioned, the limitations that talk about the physically separate device that the Why don't you take a minute and get your patent. I'm not going to cut your time off. I want to let you be able to answer the question. I think that we will focus generally on claim 19 of the 573, if you have that one handy. Claim 5 of the 656 patent, it talks about authenticating the server system, and the way that authenticating refers to the process of determining what content is in the physically separable user interface that is intended for that device. Okay, but I mean, the authentication claims, the full extent of the claim is an authentication function configured to authenticate. I mean, that's kind of a little bit general-seeming. It goes to the construction of authentication as interpreted through the specification. Yes, it's the construction. And then finally, I don't believe this case can be distinguished from Contour. Contour had no new hardware recording the two streams. You didn't cite Contour in your brief. How could it be so critical? Because Contour was decided after we provided our opening brief, so we cited it in our reply. Recording the two streams was already known at two different qualities, and this court still found a technical improvement because the camera that incorporated that functionality was able to do something that it was not able to do before, just as the SIVA digital picture frame with its new functionality was able to do something that it was not able to do before. Well, the problem for you that I'm having is in Contour, our court said the claims are drawn to a specific means or method that improves remote technology. And that specific means or method, it goes to in detail describing the two streams, one of higher quality, one of lower quality, them being recorded in parallel, and only the lower quality one sent, and then it goes on to explain how that resulted in an improvement in bandwidth. I don't see anything like that in your claims. I just see data transfer and authentication with no level of detail. I see really general statements of purpose, but without any of the specificity that the Contour claim, we relied on in Contour to say that's what made a difference. It's a specific way of doing it, not just convenient to authenticate by authenticating, but convenient to authenticate by blank, some very specific way. And those claims had a very specific way, and your claims just feel like they generally cover any way of accomplishing it. Well, I think the specific way is covered in a number of different places. One is the separate user interface that doesn't require a person to actually plug in a thumb drive into the device to download pictures. And then the other is the claims that talk about not just authentication, but talk about the interface, the programming, and how the programming is done to not just authenticate, but then to contact the separate user interface to download the photos that are intended for that particular device. And then the final key is that it's all done automatically, and the specification explains how it's done automatically. And the patent is clear that it's not a computer with a user input that would allow a user to accomplish those functions. So I think that in much the same way as Contour, there's no question that the device could do things that are spelled out in the claims that existing digital picture frames couldn't do before. Okay. I thank both counsel. This case is taken under submission.